L. L. JORDAN ET AL. V. W. B. ABNEY, ADMINISTRATOR, ET AL.

No. 1269. Decided February 8, 1904.

**1.—Adoption—Contract to Leave Property on Death.**

An agreement to adopt one as heir is distinguishable from one to leave property to such person on death of the owner. The right to inherit depends not on contract, but arises by operation of law from a compliance with the statute in regard to adoption. (Pp. 303, 304.)

**2.—Same.**

A contract between two persons that one will, at his death leave property to the other, is enforcible, where no statute is contravened thereby; it has a different effect from mere statutory adoption, and could not be defeated by a will otherwise disposing of it. See petition held to state a case of such contract, under which the devisees would hold the property as trustees, in invitum, for the party entitled to it under such contract. (Pp. 299-304.)

**3.—Same—Express Trust by Testator.**

See pleadings held insufficient to show that property bequeathed was held by the devisee upon a voluntary express trust created by such devisee's agreement to hold in accordance with a trust created by the testator. (P. 305.)

**4.—Same—New Trust Created by Devisee.**

See pleadings held sufficient to allege a valid agreement, by the owner of property, that one not regularly adopted, but living with the promissor as a daughter and performing special services in consideration of the agreement, should have the promissor's property at her death. (P. 305.)

**5.—Contract—Statute of Frauds—Pleading.**

The question whether an oral contract to leave property to one at the promissor's death is invalid under the statute of frauds, and, if so, whether performance of mutual undertakings by the promisee takes the case out from under the operation of the statute, does not arise where such contract is alleged without stating whether it was oral or written. (P. 305.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Lampasas County.

*Jacob C. Baldwin, M. G. Fakes,* and *M. M. White,* for appellants.— Inasmuch as the pleadings showed a contract entered into by Joseph C. Ogle and wife, Harriet E. Ogle, with the father of Daisy F. Jordan, by

the terms of which they agreed to adopt her as their child and to leave her their property at their death; and inasmuch as said petition further shows that this contract was carried out upon the part of Daisy F. Jordan and her father, and that after the death of Joseph C. Ogle the same was ratified and confirmed by Harriet E. Ogle; and inasmuch as it is shown from said petition that the said Harriet E. Ogle, while a widow, agreed with the plaintiff in person to leave her all of her property, in consideration of her past services and in consideration of further services rendered by her to the said Harriet E. Ogle; and inasmuch as said petition further sets forth a contract of adoption signed and acknowledged by Joseph C. Ogle and Harriet E. Ogle, as provided for by the laws of the State of Texas, said petition stated a good cause of action, upon which the plaintiffs were entitled to recover. Scarborough v. Arrant, 25 Texas, 134; Lovejoy v. Roberts, 35 Texas, 612; Clark v. West, 96 Texas, 437; Sharkey v. McDermott, 91 Mo., 647; Healey v. Simpson, 113 Mo., 340; Wright v. Tinsley, 30 Mo., 389; Nowack v. Berger, 133 Mo., 24; Kofka v. Rosicky, 41 Neb., 328; Wright v. Wright, 99 Mich., 170; Krell v. Codman, 152 Mass., 214; Van Tine v. Van Tine, 1 Law. Rep. Ann., 56 (N. J.); 1 Enc. of Law and Procedure, p. 936; Johnson v. Hubbell, 10 N. J. Eq., 332; Svanburg v. Flosseen, 75 Minn., 350; Jaffee v. Jacobson, 14 Law. Rep. Ann., 352 (U. S. C. A.); Riggles v. Erney, 154 U. S., 244, with notations (Law. Rep.).

A cause of action was stated in that the pleadings of the plaintiffs declare on an adoption legally made, with the exception of not having been filed, and that the said failure to file would not destroy the effects of the same, as the pleadings further show that the said adoption was considered to have been in full force and effect, and so acted upon by all parties interested therein. Rev. Stats., arts. 1, 2; Moore v. Bryant, 10 Texas Civ. App., 131.

A cause of action was stated in that the pleadings of the plaintiffs declare on an incumbrance or trust created by Joseph C. Ogle in favor of the plaintiff Daisy F. Jordan, subject to enforcement in a court of equity. Rev. Stats., arts. 2968, 2973; Mabry v. Harrison, 44 Texas, 295; Ranney v. Miller, 51 Texas, 265; Jordan v. Imthurn, 51 Texas, 276.

The plaintiffs' pleadings declare on a valid executed instrument binding on a married woman. Batts' Rev. Stats., arts. 1, 2; Moore v. Bryant, 10 Texas Civ. App., 131.

The plaintiffs' pleadings show a contract entered into by Harriet E. Ogle as a feme sole.

Papers of adoption signed and acknowledged by husband and wife as required by law would be binding on both the husband and wife as evidence of a legal contract of adoption, and subject to a suit for a specific performance.

It is unnecessary to require an allegation that an instrument sued on is in writing, where the same is within the statutes of frauds; but

a contract of adoption is not within the statutes of frauds. Taylor v. Deseve, 81 Texas, 252; Rodger on Dom. Rel., 410; Sharkey v. McDermott, 91 Mo., 647.

*W. B. Abney,* for appellees.—To create rights of inheritance under the statutes in regard to adoption, the statutory requirements as to filing and recording must be complied with. Rev. Stats., arts. 1, 2; Shearer v. Weaver, 56 Iowa, 578; Tyler v. Reynolds, 53 Iowa, 146.

An instrument in writing is necessary to pass title to real estate by devise or bargain and sale; hence, specific performance of a parol promise to devise real estate can not be enforced. Rev. Stats., arts. 624, 2543; Lewis v. Aylott, 45 Texas, 190; Moffett v. Moffett, 67 Texas, 644, 645.

A court of equity will never decree specific performance when the remedy is not mutual, or where one party only is bound by the agreement; and as the father of plaintiff did not sign the agreement, and could not by binding agreement surrender the care, custody and control of his child to the Ogles, specific performance of the alleged agreement by Ogle can not be enforced. De Cordova v. Smith, 9 Texas, 144; Hissam v. Parrish, 41 W. Va., 686; same case, 56 Am. St. Rep., 892; Taylor v. Deseve, 81 Texas, 249.

If the facts alleged are sufficient to show an agreement by Ogle and wife to adopt plaintiff, then upon the death of Ogle in 1894, without having executed, acknowledged, filed and recorded any articles of adoption, such agreement was breached, and was therefore barred by statute of limitation when this suit was filed, which statute of limitation was set up by demurrer. Rev. Stats., art. 3358.

If the facts alleged are sufficient to show an agreement by Ogle and wife to leave all their property to plaintiff at their death, then upon the death of Ogle in 1894, leaving a will by which two tracts of land were willed to plaintiff and all the residue of his estate being willed to Harriet E. Ogle, such agreement was breached and was therefore barred by statute of limitation when this suit was filed, which statute was set up by demurrer. Rev. Stats., art. 3358.

We have found it difficult to determine just what plaintiff relies on as her cause of action, because of the loose, indefinite and uncertain manner in which the terms and conditions of the alleged contract are set out. The rule of law is that in all suits for specific performance of a contract the terms and stipulations of the alleged contract must be clearly and definitely set forth. See Gaskins v. Peebles, 44 Texas, 392; Jones v. Jones, 49 Texas, 690.

Taking all of the allegations into consideration we believe that plaintiff's petition shows a parol promise to adopt plaintiff, first made in the lifetime of plaintiff's mother, and renewed some six years after the death of plaintiff's mother, but never completed by filing and recording the adoption as required by statute to make the articles of adoption complete.

Appellant in her brief relies upon a verbal promise to devise to plaintiff all of the estates of J. C. Ogle and Harriet E. Ogle, but we do not believe the facts alleged are sufficient to show any binding agreement to do this. On page 8, paragraph 2, of appellant's brief, in quoting from plaintiff's petition, a summing up of the whole case is made, from which it clearly appears that plaintiff bases her cause of action upon a contract of adoption, which the petition shows was never completed by filing and recording as required by law to make same valid and complete.

WILLIAMS, ASSOCIATE JUSTICE.—The certificate of the Court of Civil Appeals states that exceptions of the defendants to the plaintiffs' petition were sustained and the cause dismissed, but does not give the exceptions urged. The certificate also shows that plaintiffs amended their petition by referring to certain places in it, and adding certain words specified in the trial amendment. With the words supplied by the trial amendment inserted at the proper places, as well as we can ascertain them, the petition on which the questions arise is as follows:

" 'Come as plaintiffs Mrs. Daisy F. Jordan, joined by her husband Lawrence L. Jordan, and leave of the court being requested and obtained, file this their first amended original petition, filed in lieu of their original petition filed on September 11, 1902, with their grounds of complaint against John McIlhany of Lampasas County, Texas; W. B. Abney of Lampasas County, Texas, in his capacity as administrator of the estate of Harriet E. McIlhany; Wm. B. Frith of Brostburg, Maryland; Joseph S. Whittington and John W. Whittington, both of Martinsburg, Berkley County, West Virginia; John Barrett, Joseph Barrett, Sam Barrett and Mollie Barrett Athey, all the said Barretts being residents of Bakerton, Jefferson County, West Virginia; John T. Dorsey of Kearneysville, Jefferson County, West Virginia, and W. H. Golden and wife Elizabeth, of New York City, New York, as defendants.

" 'Aforesaid plaintiff Mrs. Daisey F. Jordan would represent and state to the court, that she was born at Leetown, West Virginia, in the year 1868, her parents being John W. Frith and Phoebe Ann Frith, both now long since deceased; that her said mother died when plaintiff was but a few months old; that her mother left a sister, namely, one Harriet F., who married one Joseph C. Ogle of Galveston, Texas; that some six years after the death of plaintiff's said mother her aforesaid uncle and aunt, namely, Joseph C. and Harriet E. Ogle, having no children of their own, offered to adopt and did adopt the plaintiff; that said plaintiff's father and said Ogle and wife entered into a contract by which it was agreed that said plaintiff's father would surrender his said child to them; that they would rear said child and legally adopt it as their own, and leave her their property at their death, and that at their death said plaintiff, as their said child, should and would have their property; that prior to said time and shortly before the death of plaintiff's said mother, said Joseph C. and Harriet E. Ogle did agree and contract with plaintiff's said father and mother to take said plaintiff as their child,

to rear her as their own child, and to adopt said plaintiff; that in accordance with the aforesaid contract, and that in furtherance of said contract and in compliance with its terms, said plaintiff was carried by her said aunt to Galveston, from her home in West Virginia, she being about six years old at the time, placed in the family of her said uncle and aunt, taught by them to look upon them as her father and mother, not allowed to visit or correspond with her own father, her sisters and brothers, but estranged and weaned away from her old family ties; that she took the name of Ogle, knew and had no other name, looked upon her uncle and aunt as her own father and mother, gave them all love, obedience and service that a daughter could give.

" 'Plaintiff would further state that she was taught and led to believe, and was told by her said adopted parents that she was their adopted child; that at their death she would inherit as their child, and acquire all property of which they died possessed; that she was their daughter, and she was led to believe that they would carry out said contract with her father and leave her all their property at the death of both of them; that she was held out to the world by her said uncle and aunt as being their daughter, and always regarded and considered herself so to be. Plaintiff now sets out and charges the truth to be that she was their adopted child, and as such child entitled to their property at their death, they, her said adopted parents never, at least since said adoption, having any children of their own or any child or children or their descendants surviving their death; that if they ever had a child of their own, it died prior to plaintiff's adoption.

" 'Plaintiff would further state, that when she was about fourteen years old her said adopted parents purchased a ranch in Lampasas County, abandoning their old home in Galveston; that the said ranch consisted of the following tracts or parcels of land, the same being lying and located in the aforesaid county of Lampasas, State of Texas: [Here follows a description of the land by metes and bounds.]

" 'Plaintiff would further state that she and her said adopted parents moved to Lampasas County, as aforesaid, on the foregoing property; that while on said ranch she not only performed daily household duties, which she had all along been performing since being old enough so to do, having all along since said adoption engaged actively in the household work, but that she assisted her uncle in outdoor work on the ranch, looking after the cattle, etc., and continued so to do as long as she remained with her said uncle and aunt, both prior and subsequent to her marriage. That on or about December 27, 1888, plaintiff married her coplaintiff, Lawrence L. Jordan, with the consent of her said adopted parents, she being married under the name of Daisy F. Ogle.

" 'That her said adopted father died in the year 1894, leaving a will in which he devised plaintiff two small tracts of land, but left the bulk of his said estate, consisting of personal property and the foregoing described lands, which was community property of himself and wife, to his said wife. That plaintiff at said time gave no thought to said will

or her adoption papers, she considering and her adopted mother considering, it to be the wish and intent of said Joseph C. Ogle that his said wife should enjoy the estate during her lifetime, and at her death the same should and would go to plaintiff as their child; that her said adopted mother so took said estate, considering the same to be hers only for life, and that the same was to go to said plaintiff at her death. And her said adopted mother took said estate charged with said trust; that she remained in possession thereof by and with the consent and approval of this plaintiff Daisy F. Jordan and her husband, always recognizing plaintiff's right therein, and agreeing with plaintiff to carry out said contract and leading plaintiff to believe that she had been duly and legally adopted, and that after the death of said J. C. Ogle the plaintiff Daisy F. Jordan continued to live in the house of her said adopted mother for a considerable length of time, and continued to work for her, rendering valuable services; that she rented a boarding house and kept boarders for a short period and turned over to her the revenues and gains therefrom, and worked for her in a great many other ways under the express promise and agreement from her that she would carry out said contract with her father and leave her all of said property at her death; and the said Harriet E. Ogle in consideration of said services, care and attention during the time she was a widow, agreed with plaintiff to carry out said contract and leave her all her property at her death.

" 'Plaintiff would state that she continued to give her said aunt all respect, love and obedience as a child, after the death of her said adopted father; that her said aunt considered plaintiff her child and had no intent or thought but that said plaintiff should and would have all of said property as aforesaid; that her said aunt did, after her husband's death and as a single woman, ratify the said contract of adoption, and expressly agreed to carry out the terms thereof, agreeing with said plaintiff to leave her all of her property at her said adopted mother's death; that never at any time were the relations of mother and child changed; that the plaintiff gave to her said adopted mother a great deal of her time and attention while she remained a widow; that her said aunt continued to look upon plaintiff as her daughter, did so hold her out to the world, and publicly declared that said plaintiff was her daughter and would have all of her property at her said death; that she was so held out by her said adopted mother up to the time of her death. That some eighteen months prior to her said adopted mother's death, which occurred on or about May —, 1902, she married one John McIlhany, named as defendant in this cause; that W. B. Abney, named as defendant, has qualified as administrator of the estate of plaintiff's said deceased aunt and adopted mother; that John W. and Joseph S. Whittington are the surviving brothers of said deceased, the same being the sole surviving next of kin, deceased's father and mother having died long prior to her said death; that the Barretts named as defendants are the sole surviving children of one of the sisters of deceased, who has long since died, the other defendants being the brothers and sisters of plaintiff

and all of her said brothers and sisters; that as before recited, plaintiff's deceased adopted mother left surviving her the two brothers afore named, and the children of her two sisters afore recited (she the said deceased having had two brothers and two sisters). Whence the foregoing parties as the sole surviving next of kin have been made parties to this suit.

" 'Plaintiff would further state that after the death of her said aunt (she dying suddenly and intestate), she had all the proper records searched for her papers of adoption, which she had all along been taught and led to believe had been properly filed as required by law; that after diligent search she finds that no such papers have been filed. But said instrument of adoption was made out and signed by J. C. Ogle and wife Harriet E. Ogle and acknowledged by them before some notary public, as required by law, and was in the custody of Harriet E. Ogle or some other person at the time of her death, though never filed and recorded. Plaintiff now alleges and charges the truth to be that said papers, that is the original papers of adoption, are in the custody and control of defendant W. B. Abney, he being the administrator as aforesaid and having the custody of all papers belonging to the estate of said plaintiff's adopted mother. The said W. B. Abney is hereby notified to produce the aforesaid papers of adoption on final trial hereof, or secondary evidence will otherwise be offered to prove the contents of the same.

" 'Plaintiff would further state that she has faithfully carried out the terms of adoption on her part; that she rendered affectionate, loving service to her said adopted parents as aforesaid as of a child to its parents under the terms of the·aforesaid contract of adoption entered into between her parents and her said deceased uncle and·aunt; that she is entitled to a full and complete carrying out of the terms of said contract of adoption.

" 'Plaintiff would further state that she is rightfully entitled to all the lands of which the deceased Harriet E. McIlhany died seized and possessed or in which she possessed any interest whatsoever, and to all of her personal property of whatsoever description.

" 'Plaintiff would further state that aforesaid estate is now being administered upon in the probate court of Lampasas County, in the hands of W. B. Abney, defendant, as administrator, and is subject to division under the same; that her interest as next of kin amounts to very little; that said administrator refuses to recognize her as being as adopted child the sole heir and entitled to the estate as such. Whence she has been compelled to bring this suit in this court to set up and establish her rights as an adopted child, to set up and establish aforesaid adoption, and furthermore to seek equitable relief and ask as she now asks for a specific performance of the aforesaid contract of adoption.

" 'Wherefore, process having been issued according to law, plaintiff prays that she be named as the adopted child of said Joseph C. Ogle and Harriet E. McIlhany; that she be declared the legal heir and child of Harriet McIlhany, deceased, and as such inherit as her sole surviving

child; that she may be decreed a specific performance of the contract of adoption; that the title to all the realty belonging to said Harriet E. McIlhany be vested in her and all of the personalty of any nature whatsoever; that all writs necessary may be issued in her behalf. Plaintiff prays for all further and general relief, both at law and in equity.'

"There appears to be no direct authority in this State as to whether a specific performance can be had of a verbal contract to adopt as an heir or to devise property to a person at death. In other States there is a direct conflict of authority. The following cases hold that specific performance can be had of a verbal contract to adopt: Healy v. Simpson (Mo. Sup.), 20 S. W. Rep., 881; Wright v. Tinsley, 30 Mo., 389; Nowock v. Berger (Mo. Sup.), 34 S. W. Rep., 489; Kofka v. Rosicky (Neb.), 43 Am. St. Rep., 685; Wright v. Wright, 23 Law. Rep. Ann., 196 (Mich. Sup.); Krell v. Codman, 14 Law. Rep. Ann., 860 (Mass. Sup.); Van Tyne v. Van Tyne, 1 Law. Rep. Ann., 56 (N. J.); Johnson v. Hubbell, 10 N. J. Eq., 332, reported in 66 Am. Dec., 773, where an extensive note will be found.

"The following authorities deny the right to such relief: Lone v. Hewitt, 44 Iowa, 363; Tyler v. Reynolds, 53 Iowa, 146; Shearer v. Weaver, 56 Iowa, 578; Austin v. Davis (Ind.), 12 Law. Rep. Ann., 122; Wallis v. Long, 155 Ind., 523; Johns v. Johns, 67 Ind., 440; Renz v. Drury (Kan.), 45 Pac. Rep., 71."

The questions propounded are these:

"1. Will an action lie for specific performance of a verbal contract to adopt a child as an heir, and if so, are the facts alleged in the pleadings sufficient to entitle the plaintiff to that relief?

"2. Will an action lie to enforce the specific performance of a verbal contract to leave property to a person at death? and if so, are the facts alleged in the pleadings sufficient to entitle the plaintiff to that relief, in view of the allegation that a will was made by Joseph C. Ogle, devising his property, with a small exception, to his surviving wife?

"3. Are the facts alleged sufficient to create a trust for the benefit of the plaintiff in Joseph C. Ogle's interest in the community property devised to his wife?

"4. Are the facts alleged sufficient to show such ratification of the original contract of adoption, or such execution of a new contract, on the part of Harriet E. McIlhany (nee Ogle) after the death of her husband, and such consideration therefor, as entitled plaintiff to recover thereon."

First. The question as to specific performance of a verbal contract to adopt, merely, does not seem to arise, as the allegations are of a contract to adopt and also to leave property at death. We are strongly inclined to think there is a distinction between the two classes of contracts, which some of the authorities have not observed. This is a question which we do not purpose now to discuss, since we do not regard it as involved in the case made by the petition. The mere contract to adopt, followed by the assumption and performance of the duties of

parent and child and the execution of adoption papers not filed for record, as alleged, do not comply with the statute regulating adoption and do not establish the right of inheritance thereby provided as a consequence of lawful adoption. This right arises by operation of law from the acts of the parties made in compliance with the statute and does not depend on or arise from contract.

Second. This is the real question in the case. That a contract between two persons upon valuable consideration, that one will, at his death, leave property to the other, is enforcible, where no statute is contravened, is held by an almost unbroken current of authority, English and American. Such contracts when sufficiently certain have been held valid and enforcible, in equity as well as at law, whether they provide for the payment of money, or the leaving of specific property, or of all or a moiety of that which the obligor should leave at his death. They have usually been put in the form of agreements to bequeath by will, but this has not been regarded as an essential feature; agreements to leave the property, or that the obligee should have it, at the death of the obligor, being held sufficient. In addition to the cases cited in the certificate, see Wyche v. Clapp, 43 Texas, 548 and authorities cited; Hill v. Gomme, 1 Beav., 540; Goilmere v. Battison, 1 Vern., 48; Fortescue v. Hennah, 19 Ves. Jr., 67; Izard v. Middleton, 1 Desau., and authorities cited in note. The legal effect of this kind of a contract is different from that given by law to mere statutory adoption; and we apprehend it has been through failure to observe this distinction that some of the courts whose decisions are referred to have been led to the conclusion that such contracts are excluded by the statutes allowing adoptions. The latter, as we have pointed out, is not a contract, and statutes authorizing and regulating it do not undertake to regulate contracts. They are intended rather to give the right of inheritance, which does not arise from contract, but from the law, while rights, such as those upheld in the authorities to which we have referred, are created and fixed by contract. The Indiana and Illinois courts refuse to specifically enforce oral contracts of this nature, when they involve land, although partly performed, because they are within the statute of frauds; while other courts, admitting that the statute, unless avoided, applies to the contracts when oral and relating to real estate, hold that performance, such as is here alleged, takes them out of its operation. This question is not now presented because (1) the certificate does not show that benefit of the statute of frauds was claimed in the exceptions, and (2) the petition does not affirmatively show that the agreements alleged are not evidenced by writing. Gonzales v. Chartier, 63 Texas, 37. The original contract with J. C. Ogle, as alleged, is therefore held sufficient to entitle plaintiff to a specific performance of it as to property left belonging to him at his death. This could not be defeated by the will bequeathing the property to his widow, since that only took effect after death. (Authorities before cited.) If the case made by the peti-

tion should be established, the legal title which passed by the will would be held by Mrs. Ogle and her heirs or devisees as trustees in invitum.

Third. We assume that this question refers to a voluntary, express trust, under which Mrs. Ogle agreed to hold the property, and not to the character of trust mentioned above. It is not alleged that the property was bequeathed to her upon any trust created by the testator, by whom alone such a trust could be imposed. We therefore answer the question negatively.

Fourth. The petition expressly alleges an agreement on the part of Mrs. Ogle, after she became competent to contract, that, in consideration of the female plaintiff continuing to perform the specific services and duties, she should have all of Mrs. Ogle's property at her death, and a performance by the plaintiff of all such duties and services. We see no reason to doubt that such agreement thus performed by plaintiff was binding on Mrs. Ogle's property left at her decease. The contract made while she was covert did not bind her, and we do not hold that the mere continuance, after her husband's death, of the pre-existing conditions would constitute it a contract on her part. A new agreement after her discoverture, with all the essentials of a valid contract, is alleged, and this we hold to be sufficient, the statute of frauds apart, to bind the property left at her death.