Dr. Henry HAYNES et al., Appellants,

v.

A. Judson HENDERSON et al., Appellees.

No. 10836.

Court of Civil Appeals of Texas.

Austin.

April 12, 1961.

Rehearing Denied May 3, 1961.

858 ■

Byron L. McClellan, Gatesville, Turner & Seaberry, Eastland, for appellants.

Will Wilson, Atty. Gen., James H. Rogers, Mary K. Wall, J. Arthur Sandlin, Asst. Attys. Gen., for appellees.

ARCHER, Chief Justice.

This suit was brought by appellants against appellees seeking a construction of the will and codicil of Parrie Haynes, deceased, and in the alternative, seeking to enforce a contract made between Parrie Haynes and her husband W. A. Haynes whereby each agreed to will his or her property to the survivor of the marriage upon condition that the survivor by will divide his or her estate in a substantially equal manner between the survivor's nearest of kin and the deceased spouse's nearest of kin (such nearest of kin to be determined as of the time of the survivor's death).

W. A. Haynes and Parrie Haynes were married for many years and had no children. Appellants are the nearest living kin (or their successors in interest) of W. A. Haynes. W. A. Haynes died in 1953,

leaving a will dated in 1911 which devised all of his property to his widow, Parrie Haynes. Parrie Haynes died in 1957, leaving a will dated August 19, 1954, and a codicil thereto dated June 23, 1956. The effect of the 1954 will is not in dispute and it is contended by appellants that the 1954 will would have substantially complied with the contract between W. A. Haynes and Parrie Haynes. The effect of the 1956 codicil and its compliance with the contract between Mr. and Mrs. Haynes are involved in this lawsuit.

Appellee Fern Bond was the nearest living kin of Parrie Haynes on her death, and appellants do not seek to attack any devise or bequest to her under the will or codicil of Parrie Haynes. Appellants do not attack the validity of the bequest to appellee Killeen Independent School District. Appellee A. Judson Henderson is independent executor of the estate, and appellants have not attacked the provisions of the will or codicil applicable to him. The remaining appellee is The Texas Youth Council which acts for the Corsicana State Home—described in the 1956 codicil as the State Orphan Home of Texas, and the real contest in this suit is between this appellee and appellants.

Prior to trial, the trial court sustained a special exception of The Texas Youth Council to the allegations of appellants relating to the contract theory of the case, and such ruling thus effectively limited appellants' suit to their count on construction of the will and codicil.

After the hearing on the merits, the trial court entered judgment construing the will and codicil in favor of The Texas Youth Council and against the construction sought by appellants, and this appeal has since been duly perfected.

The appeal is founded on four points and are that the court erred in construing the will and codicil to limit appellants to take only $40,000; and in failing to construe the codicil as limiting only the personal property bequests to $40,000 and not as affecting the devise of real property to them; in sustaining the special exception of The Texas Youth Council to paragraph 9 of appellants' First Amended Original Petition; and in permitting witness Clements to testify as to oral declarations of testatrix to prove the intention of testatrix.

W. A. Haynes and Parrie Haynes were married for many years and had no children. Appellants are the nearest living kin of W. A. Haynes and appellee Fern Bond is the nearest living kin of Parrie Haynes.

W. A. Haynes died in 1953, his will is dated in 1911 and bequeathed all of his property to Parrie Haynes who died in 1957, leaving a will dated August 19, 1954 and a codicil thereto dated June 23, 1956. The will and codicil were probated together as the last will of Mrs. Haynes on August 26, 1957.

Mrs. Haynes owned real property of an appraised value of $230,000 approximately and personal property of an appraised value of approximately $250,000.

By her will of August 19, 1954, Parrie Haynes left her property in the following manner:

"(1) To Fern Bond, the Maxdale lot, the 3000 acres of the ranch lying South of the Lampasas River, and $50,000 in government bonds;

"(2) To the Killeen Independent School District, $100,000 in U. S. Bonds, with explicit instructions as to the use of same and the income therefrom;

"(3) To A. Judson Henderson, as his executor's fee, 10% of the inventoried value of the estate, or approximately $48,000;

"(4) To appellants herein, or person under whom they claim, the 4000 acres of the ranch North of the river, the other houses and lots, the minerals in Comanche County, the Milam County land, and the remainder of the personal

property of an inventoried value of some $102,000."

The pertinent portions of the codicil dated June 23, 1956, are:

"The sums that I have devised to the heirs of my deceased husband William Allen Haynes in my last will shall not exceed the following amounts:

"To Bob Haynes Five Thousand Dollars, to Jim Haynes, Five Thousand Dollars, to Ada Haynes Glover Ten Thousand Dollars, to Dr. Henry Haynes Ten Thousand Dollars, and to the heirs of Jennie Haynes Stelle deceased, Ten Thousand Dollars, jointly to be divided according to the law of descent and distribution.

"The remainder of my estate shall go to the State Orphan Home of Texas to help orphan children."

As is noted the prime question is the effectiveness of the codicil in the restriction of appellants to a total bequest of $40,000. The court was called on to construe the codicil in connection with the will.

Appellants take the position that except as expressly stated in the codicil that the deceased did not intend to change her will, and that the codicil must be construed, if it can fairly be done, as to make it harmonize with the purposes declared in the body of the will, and that the bequest in the will was not revoked by the subsequent provision in the codicil, because the intention to revoke does not appear either by express provision or necessary implication. The further contention is made that the codicil republished the will as a matter of law except as it clearly intended to change the will.

Appellants cite in support of their position a number of cases among which are Cliett v. Cliett, 1 Posey 407; Baker v. Wright, Tex.Civ.App., 157 S.W.2d 470, er. ref.; Hinson v. Hinson, 154 Tex. 561, 280 S.W.2d 731.

Appellants say that the use of the words the *sums* that I have devised, etc. * * * shall not exceed $40,000 refers to the personal estate only, and cite 83 C.J.S. 787, and other authorities claiming that it is not manifest on the face of the codicil that appellants were to be deprived of the lands which would go to them under the 1954 will.

The suit was based on two separate counts, first, on the construction of the will and codicil and second, on a contract theory, alleging that W. A. Haynes and wife Parrie Haynes made an oral contract in 1911 to make wills whereby each would leave his or her property to the survivor and the survivor would then will the property remaining at the survivor's death in such a manner as would substantially divide the remaining estate between her nearest blood relatives and his nearest blood relatives then living, and that such wills were made.

Appellants assert that the 1954 will of Parrie Haynes was in substantial compliance with such contract.

The Texas Youth Council excepted to the pleadings setting up the contract, and such exception was sustained, which eliminated appellants' second count, or contract theory, from the case and this action is assigned as error.

The Youth Council in its exception contended that no evidence should be permitted by appellants to show the alleged contract by reason of the statute of frauds. Appellants contend that the pleaded performance by W. A. Haynes and the acceptance of benefits by Parrie Haynes, estoppel took such contract and proof thereof outside the provisions of the statute, and made it inapplicable to the case. Citing 169 A.L.R. 44–45; 20-A Tex.Jur. 415 and Kirk v. Beard, Tex.Civ.App., 334 S.W.2d 531, er. granted.

Appellees' position is that the trial court properly limited appellants' share in the

Parrie Haynes estate to $40,000 by the express terms of the codicil.

We believe that the court was correct in construing the will and codicil to limit appellants to the cash bequest of $40,000.

Mrs. Haynes in her original will bequeathed to her niece, Fern Bond 3,000 acres of land south of the Lampasas River, together with $50,000 in cash. The will devised to Killeen Independent School District for student higher education $100,000 in United States bonds. The remainder of the estate was devised to the appellants.

The codicil gave additional personalty to Fern Bond, appraised at $15,000 and the above mentioned devise of $40,000 to the heirs of her husband.

A new remainderman was substituted, namely, the "State Orphan Home of Texas to help orphan children."

It is to this particular portion of the codicil, as interpreted by the court, that objection is made. No complaint is directed to the bequest to Fern Bond or to the School District, but as we have stated, complaint is to the restrictive provision of the codicil as relating to appellants.

■ A will and a codicil are construed together as one instrument and a will may be revoked wholly or in part by implication from express provisions of a later testament, such as a codicil, by making a different and contrary disposition of identical properties. Laborde v. First State Bank & Trust Co., Tex.Civ.App., 101 S.W. 2d 389, er. ref.

The will and codicil in this case were prepared by a lawyer of experience and who was acquainted with the testatrix and the extent of her property. A change in extent of devises was made in the codicil and the maker thereof provided that the remainder of the estate should go to the State Orphan Home, without mentioning remainder of personal property nor that the real estate was excluded.

In the codicil it is to be noted that the bequest to Fern Bond was in addition to the amount devised in the will.

The use of the words *sums* and *amount* refer back to bequests of land and money in the will and to the additional amount given by the codicil, were made by the maker of the will and the codicil in their broadest sense.

As stated herein, Mrs. Haynes had no children but it is apparent that she was interested in youth. In the will Mrs. Haynes gave $100,000 to the School District with the limitation that "the interest to help pay necessary expenses of students attending a State controlled college or University in Texas."

The remainder of Mrs. Haynes' estate was made up in the principal part, if not entirely, of the tract of approximately 4,000 acres which lay north of the Lampasas River, appraised at an average of $30 per acre.

We believe that the intention of Mrs. Haynes as expressed in the codicil was to limit the total share received by the appellants named in the codicil to $40,000.

■ The use of the words "sum" and "money" in testamentary instruments are terms of flexible meaning and may include all kinds of property, real and personal. 57 Am.Jur. 894; In re Schriever's Estate, 91 Misc. 656, 155 N.Y.S. 826; Flower v. Dort, Tex.Civ.App., 260 S.W.2d 685, er. ref., N.R.E., holds that in a comprehensive sense money means wealth, equivalent to property.

It is apparent from the provisions of the codicil that Mrs. Haynes was not trying to make an equal division between her heirs and the heirs of Mr. Haynes of her property.

A large part of the property disposed of by Mrs. Haynes was her separate property and the land given to Fern Bond was

largely the separate property of Mrs. Haynes.

The further fact that Mrs. Haynes was giving substantial sums to the School District, The Orphans Home and a sum to her executor, would show that she did not intend that one half of her estate would go to the Haynes heirs. Mrs. Parrie Haynes was thoroughly familiar with her property and was active in the management thereof.

We do not believe that the Trial Court erred in sustaining the special exception of The Texas Youth Council to the allegations of appellants relating to the contract theory of the case. Such ruling effectively limited appellants' suit to their count on construction of the will and codicil.

Appellees excepted to the allegations as to the contract between Mr. and Mrs. W. A. Haynes as to a future disposition of their property. Such contract is an oral one pleaded by appellants that the survivor would execute his or her will under which their community property would be devised into two substantial equal moieties, one to the then living collateral blood relatives of the spouse dying first and the other moiety to go to the then living collateral blood relatives of the surviving spouse as under the laws of descent and distribution.

The 1911 wills of Mr. and Mrs. Haynes were not joint and mutual but were separate and in a simple form. W. A. Haynes gave all of his property to Parrie Haynes, in fee simple, to sell or dispose of as she wished. The will of Mrs. Haynes was the same tenor as that of her husband.

The 1954 will of Mrs. Haynes made no effort to comply with the alleged oral agreement. It gave $100,000 to the School District and $48,000 to the executor which are not in conformity with the alleged agreement to divide the property in equal moieties. There is no effort to set aside the bequest to the school and the executor.

■ We believe that such oral agreement as contended for by appellants would be void under the Statute of Frauds. Article. 3995, R.S.; Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147; Cate v. Cate, Tex.Civ.App., 249 S.W.2d 73, no writ history; Arnold v. Starke, Tex.Civ.App., 292 S.W.2d 887, er. ref.

■ An objection was made to the admission of the testimony of C. R. Clements, a witness called by appellees, concerning any oral declarations made by Parrie Haynes at the time of the execution of the codicil as being hearsay as to appellants, and that oral declarations by a testator is inadmissible to prove intention or to explain the contents of the testamentary instrument. Mr. Clements was one of the witnesses to the codicil and testified that he was a friend of both Mr. and Mrs. Haynes and a business advisor. His testimony is as follows:

"The Court: All right. I will reserve my ruling. You may go ahead and take the testimony so that you may take it in the form of a bill if you desire to do so and in the event that I exclude it.

"Mr. Seaberry: And we need make no further objections, Your Honor, in order to preserve our objection?

"The Court: That is correct, yes, sir.

"Q. Mr. Clements, where did you witness the will of Parrie Haynes? A. It was in Killeen. She and Mr. Henderson came to town.

"Q. Go ahead and explain how it happened. A. And they parked their car in front of the bank. Mrs. Haynes was not able to come into the bank building and so Mr. Sutton and I went out to the car.

"Q. Who is Mr. Sutton? A. Mr. Will Sutton was the other witness to the codicil. He is now deceased.

"Q. So you two went out to the car? A. Yes, sir.

"Q. Who else was present? A. Mrs. Haynes and Mr. Henderson.

"Q. What happened when you got to the car? A. Mr. Henderson explained to us that she had this will with the codicil and wanted us to witness the codicil. He requested that we read it over in the hearing of all of us, which we did, both the will and the codicil.

"Q. They were read aloud to all of you? A. Yes, sir.

"Q. Did you ask Mrs. Haynes any questions? A. Yes. I told her that the codicil, as I understood it, that she was making no change in the bequest to the school or to Mrs. Bond, and that she was making no change in the administration expenses, but that she was limiting the Haynes Heirs to $40,000.00 and the rest of her estate was to go to the orphan's home. She said that was correct and that was what she wanted to do.

"Q. She stated that she was intending by that will to limit the W. A. Haynes heirs to $40,000.00? A. Correct."

The admission of this testimony was error but such was not reversible error.

■ The trial was before the court and the admission of incompetent evidence will not generally require a reversal of the judgment when there was competent evidence to authorize its rendition, and it will ordinarily be assumed that the Trial Court disregarded such testimony. Rules 434 and 503, Texas Rules of Civil Procedure; Moore v. Kennedy, 81 Tex. 144, 16 S.W. 740, Commissioners' decision adopted by the Supreme Court.

■ The judgment indicates that the basis of the court's holding was the actual language used in the will and codicil—the judgment says "by the express language employed by her in her said will and codicil

restricted and limited the value of the property, real, personal or mixed, passing thereby to plaintiffs to * * * $40,000, and that by the express language thereof the residue of her estate, real, personal or mixed * * * passed and vested in * * * the Texas Youth Council * * *" Kirk v. Beard, Tex.Civ.App., 334 S.W.2d 531, writ granted, is a case considering declarations of the testator.

In Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, 282, Judge Brewster stated (Syl. Par. 25):

"If it be conceded that ambiguity exists by reason of the structure of the sentence in question, we believe the same must be resolved in favor of legality. Charities like those specified by Mrs. Hofstetter are held in such high regard by the law that the rules of construction are more liberal to · sustain them than they would be if the gifts were to individuals."

The Court further stated that a proposition by the losing party * * * etc. "ignores the fact that public charity trusts are particular favorites of courts of equity, which are quick to protect and enforce them." (Syl. Par. 39.)

Finding no reversible error the judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

Regardless of the nature or sufficiency of the part performance alluded to by Associate Justice Gray in his dissent, it is not "unequivocally referable" to the alleged oral contract to devise. Every act of Parrie Haynes in accepting benefits under the will of W. A. Haynes may be explained quite separate and apart from the alleged oral contract. Unless the acts relied upon to take an oral contract out of reach of the Statute of Frauds are unequivocally referable to such contract, they do not tend to prove the existence of the oral contract.

Francis v. Thomas, 129 Tex. 579, 106 S.W. 2d 257. Here, all the acts of Parrie Haynes are consistent with her rights under the will of W. A. Haynes.

GRAY, Justice (dissenting).

I am not in accord with the holding of the majority and will briefly note my views.

In passing on the special exception referred to in the majority opinion we must accept the pleadings as true. Then the agreement as alleged was made, W. A. Haynes performed his part of it, Parrie Haynes accepted the benefits of it, took possession of, and claimed, the property passing under W. A. Haynes' will, and thereafter refused to perform her part of the agreement. This part performance is sufficient to take the agreement out of the statute of frauds as to Parrie Haynes because to allow her to refuse to perform under these conditions would constitute a fraud. Burgin v. Godwin, Tex.Civ.App., 167 S.W.2d 614, Er. ref. w. m. In French v. French, Tex.Civ.App., 148 S.W.2d 930, 936, Er. ref., c. j., the Court said:

"This contract for mutual and reciprocal wills was lawful and binding and could and should be enforced after one of the parties had died and the will of such deceased party probated. Jordan v. Abney, 97 Tex. 296, 304, 78 S.W. 486; Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395; 43 A.L.R. 1020; Epperson v. White, 156 Tenn. 155, 299 S.W. 812, 57 A.L.R. [601] 607; 60 A.L.R. 627; 102 A.L.R. 491."

The holding of the Supreme Court in Kirk v. Beard, 345 S.W.2d 267, is directly in point on this conclusion.

It is my opinion that the trial court erred in sustaining the special exception.

I am also of the opinion that the language of the codicil by itself is not sufficient to revoke the devises of real estate made to the heirs of W. A. Haynes in the will. This is because it is necessary to attribute a meaning to the word "sums" used in the codicil without any showing that the interpretation is the meaning given the word by the testatrix. In Laborde v. First State Bank & Trust Company, cited in the majority opinion, the Court said:

"It is a well-settled rule—and certainly a wise one—that a codicil may not effectuate the revocation of a will except by express language having that particular effect, or by necessary implication arising from express provisions of the later instrument. Certainly, revocation cannot be implied from vague, doubtful, or ambiguous language used in a codicil, or from language less clear and specific than that used in the instrument sought to be revoked. Schouler on Wills (5th Ed.) §§ 407, 426; Alexander on Wills, § 528; Thompson on Wills (2d Ed.) § 167; 68 C.J. pp. 803, 808, §§ 491, 500; 28 R.C.L. p. 200, § 158; 51 A.L.R. 696, annotation; Adams v. Maris (Tex. Com.App.) 213 S.W. 622." [101 S.W. 2d 391].

Even if it be said that the meaning given the word by law must be accepted it does not appear that the word has, by law, been construed as including real estate but rather as including money only. See 40 Words & Phrases, p. 718.

In connection with the last above statement it is to be noticed that the majority holds that the quoted testimony of the witness Clements is not admissible. I do not agree with this holding because it is my opinion that such testimony is admissible. Combs v. Howard, Tex.Civ.App., 131 S.W. 2d 206.

I would reverse the judgment of the trial court and remand the cause for another trial.